UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TERRA ENGINEERING & CONSTRUCTION CORP.
and CNA INSURANCE COMPANY,

    Plaintiffs,

v.                                Case No. 03-C-582

CAMP, DRESSER & McKEE, INC.,

    Defendant,
    Third Party Plaintiff,

NICKELS & BRADLEY, S.C. and
CERTAIN UNDERWRITERS AT LLOYD'S
OF LONDON

    Third Party Defendants.

**ORDER ON MOTION TO INTERVENE AND FOR LEAVE TO FILE AMENDED PLEADINGS**

### I. PROCEDURAL BACKGROUND

On December 11, 2006, Transcontinental Insurance Company ("Transcontinental") filed a motion to intervene in this action for the purpose of substituting itself for Plaintiff "CNA Insurance Company" ("CNA"), pursuant to Fed. R. Civ. P. 24(a), and for leave to file amended pleadings within a reasonable time thereafter, pursuant to Fed. R. Civ. P. 15(a) and 6(b). Transcontinental alleges that CNA is not a legal entity. Alternatively, Transcontinental seeks permissive joinder pursuant to Fed. R. Civ. P. 20(b).

The motion is now fully briefed and is ready for decision. For the reasons which follow, Transcontinental's motion to intervene and for leave to file amended pleadings will be granted.

## II. FACTUAL BACKGROUND

In 1997, Camp, Dresser & McKee, Inc. ("CDM") contracted with the City of Milwaukee ("City") to provide design and engineering services for the partial removal of the North Avenue Dam on the Milwaukee River, and for in-stream actions to contain contaminated sediments ("the Project"). Terra contracted with the City to construct the Project, which work was performed in the winter and spring of 1997-1998. Problems arose with the Project in 1998, and Terra, CDM, and the City worked together to design the repairs.

Terra and CNA filed suit against CDM on April 25, 2003, in Milwaukee County Circuit Court, claiming that CDM negligently provided professional design services. Terra alleged that it was a Wisconsin corporation with a business office in Madison, Wisconsin. CNA alleged that its primary business office was in Downers Grove, Illinois, that CNA made payments to Terra under a reservation of rights, and that Terra's rights had been subrogated to CNA. CNA claimed damages totaling $731,754.68, and Terra claimed separate damages in the amount of $125,466.50.

On June 19, 2003, CDM removed the matter to federal court based on diversity jurisdiction.

Transcontinental issued a commercial general liability ("CGL") policy of insurance to Terra for the period between April 1, 1998 and April 1, 1999. CDM first received a copy of the pertinent insurance policy on December 11, 2006.

Transcontinental is incorporated under the laws of the state of New York, and is headquartered in Chicago, Illinois. It is a wholly owned subsidiary of the Continental Casualty Company, which is a wholly owned subsidiary of the Continental Corporation. The Continental Corporation is a wholly owned subsidiary of CNA Financial Corporation ("CNA Financial"). There is no legal entity named "CNA Insurance Company."

2

Transcontinental was the only indirect subsidiary of CNA Financial to issue a CGL policy to Terra for the period from April 1, 1998 to April 1, 1999. Transcontinental authorized payment of over $700,000 to Terra in order to complete repairs to the Project.

### III. DISCUSSION

Transcontinental seeks to substitute itself for CNA as the real party in interest in its dispute with CDM. Under Fed. R. Civ. P. 24(a):

> (a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Transcontinental also seeks leave to file amended pleadings within a reasonable time after substitution, pursuant to Fed. R. Civ. P. 15(a) and 6(b).

CDM objects to Transcontinental's motion to substitute and to amend. CDM argues that because CNA is a non-entity which lacked the capacity to sue, the Milwaukee County Circuit Court never had subject matter jurisdiction over CNA's claim, and consequently neither did the federal court. CDM contends that because CNA never invoked the court's jurisdiction over its claim, this claim cannot be asserted anew by Transcontinental.

Moreover, according to CDM, the time for Transcontinental to bring additional claims is precluded by the applicable six year statute of limitations under Wis. Stat. § 893.52. Furthermore, CDM argues that even if Transcontinental were allowed to substitute itself for CNA, Transcontinental should not be allowed to amend the pleadings to conform with the substitution.

**A. Lack of Capacity and Subject Matter Jurisdiction**

The first issue to address is whether CNA's lack of capacity to sue deprives the court of subject matter jurisdiction. A court must dismiss an action if it appears to lack subject matter jurisdiction. Wis. Stat. § 802.06(8)(c). If a state court does not have subject matter jurisdiction over a claim, the federal court also does not have jurisdiction. Fed. R. Civ. P. 17(b); Wis. Stats. §§ 801.03, 801.04.

The parties dispute whether lack of capacity to sue affects the court's subject matter jurisdiction. CDM points to Wisconsin law to support its argument that in order to have subject matter jurisdiction, the plaintiff must be a "person" with the capacity to sue or be sued.

State law controls a determination of whether a party has the capacity to sue or be sued. Under Fed. R. Civ. P. 17(b):

> (b) Capacity to Sue or be Sued. The capacity of an individual, other than one acting in a representative capacity, to sue or be sued shall be determined by the law of the individual's domicile. The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized. In all other cases capacity to sue or be sued shall be determined by the law of the state in which the district court is held.

CDM argues that CNA lacked the capacity to sue because it is a non-entity that does not fit into the definition of "person" or "plaintiff" as defined by Wisconsin statute. Wis. Stat. § 801.04 describes "Jurisdictional requirements for judgments against persons, status and things," and provides:

> (1) JURISDICTION OF SUBJECT MATTER REQUIRED FOR ALL CIVIL ACTIONS.
>
> A court of this state may entertain a civil action only when the court has power to hear the kind of action brought. The power of the court to hear the kind of action brought is called "jurisdiction of the subject matter". Jurisdiction of the subject matter

4

is conferred by the constitution and statutes of this state and by statutes of the United States; it cannot be conferred by consent of the parties. Nothing in chs. 801 to 847 affects the subject matter jurisdiction of any court of this state.

Wis. Stat. § 801.03 defines "person" and "plaintiff" for purposes of jurisdiction.

(2) "Person" means any natural person, partnership, association, and body politic and corporate.

(3) "Plaintiff" means the person named as plaintiff in a civil action, and where in this chapter acts of the plaintiff are referred to, the reference attributes to the plaintiff the acts of an agent within the scope of the agents authority.

CDM contends that CNA was a non-entity when it initiated its claim for $731,754.68, and was not a "person" with the capacity to sue or be sued. Therefore, according to CDM, this court never had subject matter jurisdiction over CNA's claim.

In response, Transcontinental argues that lack of capacity to sue does not affect subject matter jurisdiction. Rather, lack of capacity is an affirmative defense subject to waiver under federal rules, and under Wisconsin law does not deprive a court of subject matter jurisdiction.

Under Fed. R. Civ. P. 9(a), regarding pleading special matters:

(a) Capacity. *It is not necessary to aver the capacity of a party to sue or be sued* or the authority of a party to sue or be sued in a representative capacity or the legal existence of an organized association of persons that is made a party, except to the extent required to show the jurisdiction of the court. *When a party desires to raise an issue as to the legal existence of any party or the capacity of any party to sue* or be sued or the authority of a party to sue or be sued in a representative capacity, *the party desiring to raise the issue shall do so by specific negative averment*, which shall include such supporting particulars as are peculiarly within the pleader's knowledge.

(emphasis added).

The Seventh Circuit has interpreted the phrase "by specific negative averment" to mean that "a party must raise lack of capacity to sue in an appropriate pleading or amendment to avoid waiver." *Wagner Furniture Interiors, Inc. v. Kemner's Georgetown Manor, Inc.*, 929 F.2d 343, 345 (7th Cir.

5

1991); *see also Swaim v. Motan Co.*, 73 F.3d 711, 718 (7th Cir. 1996) ("Failure to raise capacity in a responsive pleading amounts to forfeiture of that right.).

I conclude that failure to raise lack of capacity to sue in a responsive pleading amounts to a waiver of such defensive assertion. As such, because CDM did not raise the defense that CNA lacked the capacity to sue in their answer to the complaint, CDM has waived this argument. Moreover, as noted by Transcontinental, CDM will be able to plead affirmative defenses, including lack of capacity to sue, in response to an amended complaint properly naming Transcontinental as the co-plaintiff.

Transcontinental also argues that Wisconsin state courts have held that lack of capacity to sue does not deprive a court of subject matter jurisdiction. It cites *Estate of Kitzman v. Kitzman* to support its position. 163 Wis. 2d 399, 471 N.W.2d 293 (Wis. Ct. App. 1991). In *Kitzman*, the defendant argued that the plaintiff should not be allowed to amend the complaint because the action had been filed by a party which lacked the legal capacity to sue. 163 Wis. 2d at 401, 471 N.W.2d at 294. Specifically, the defendant contended that:

> [B]ecause [the statute] allows a "party" to amend a pleading, the statute presupposes that an action has been filed by a party with legal capacity to sue. They continue their argument to the effect that if no such action has been filed by a "party," it is as if no summons and complaint had ever been filed. Defendants conclude that the complaint is a nullity, and no pleadings exist which can be amended.

*Id*. at 402; 471 N.W.2d at 294.

The Wisconsin Court of Appeals rejected the argument. The court agreed that the pleading was "undeniably defective," but held that "the defect must be disregarded, since it does not affect the substantial rights of the defendants." *Id*. at 403; 471 N.W.2d at 294. The court quoted Wis. Stat. § 805.18(1), which states that "[t]he court shall, in every stage of an action, disregard any error or

defect in the pleadings or proceedings which shall not affect the substantial rights of the adverse party." *Id*.

CDM also appears to argue that because the complaint named a party that was not a real party in interest, the court should deny Transcontinental's motion and ultimately dismiss the claim. In response, Transcontinental argues that under Fed. R. Civ. P. Rule 17(a), the absence of a real party in interest does not divest the court of subject matter jurisdiction.

Under Fed. R. Civ. P. Rule 17(a):

No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

Transcontinental cites *Sabre Inc. v. Northwestern Airlines* to support its contention that the failure to name the real party in interest does not eliminate subject matter jurisdiction. 2004 U.S. Dist. LEXIS 27444, *12-17 (N.D. Tex. 2004). In *Sabre*, the plaintiff, Sabre, Inc., filed suit in Texas, and then sought to amend its complaint to include the true party in interest, "Sabre Travel International Limited" (STIL). *Id*. at *6. The court held that it still had jurisdiction over the case despite the failure to name STIL as the real party in interest. *Id*. at *16. According to the court, Sabre, Inc.'s "amended complaint is sufficient to cure any potential jurisdictional complications that may have arisen from Sabre, Inc.'s initial filing of its complaint, and that Sabre does not lack standing to pursue its suit before this Court." *Id*. at *15. Moreover, the court held that "even if Sabre, Inc. lacked standing to pursue a breach-of-contract claim against Northwest, Sabre's . . . amended complaint relates back to the original filing date." *Id*. at *16.

7

I conclude that lack of capacity to sue on the part of CNA does not deprive this court of subject matter jurisdiction. As did the defendant in *Kitzman*, CDM is essentially arguing that because "CNA Insurance Company" was not a party with legal capacity to sue, there was basically no claim ever asserted by CNA. To be sure, CNA did not have the legal capacity to sue, as it is a non-entity. However, this constitutes a defect in the pleadings, and CDM has not presented any evidence that this defect affected its substantial rights. Moreover, CDM has not cited any case law which suggests that lack of capacity to sue deprives a court of subject matter jurisdiction.

Moreover, the failure to name the real party in interest does not eliminate subject matter jurisdiction. Fed. R. Civ. P. Rule 17(a), as well as the case law cited by Transcontinental, supports Transcontinental's contention that the naming of CNA as the party in interest does not lead to dismissal of the case. Rather, under the Federal Rules, Transcontinental is allowed to substitute as the real party in interest, which has "the same effect as if the action had been commenced in the name of the real party in interest."

In sum, despite CNA's status as a non-entity without the legal capacity to sue, both the state and federal courts retain subject matter jurisdiction over the claim. As a result, I reject CDM's argument that Transcontinental cannot substitute itself for the erroneously denominated "CNA Insurance Company" because the court never had subject matter jurisdiction.

**B. Relation Back of Amended Complaint**

CDM also contends that the time for Transcontinental to bring additional claims is barred by the applicable six year statute of limitations period. Wis. Stat. § 893.52. Moreover, CDM notes that under Fed. R. Civ. P Rule 15(a), leave to amend is given only "when justice so requires." CDM argues that Transcontinental has failed to provide a reason for amendments to the pleadings.

8

Specifically, CDM notes that the case has been pending for approximately 3 1/2 years, CNA has been represented by counsel for the entire period, and Transcontinental has not offered any indication of what pleadings it wishes to amend, why it wants to amend these pleadings, or why it has been unable to amend during the last 3 1/2 years.

Transcontinental argues that the statute of limitations has not run because Transcontinental's amendments relate back to the date the original complaint was filed.

Under Fed. R. Civ. P. 15(c):

(c) Relation Back of Amendments. An amendment of a pleading relates back to the date of the original pleading when

> (1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or
>
> (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
>
> (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Transcontinental asserts that the amendment relates back because "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Transcontinental contends that its proposed amendments merely provide the proper name and address for the plaintiff, and that merely correcting a misnomer of a party already before the court is a classic example of an amendment which relates back because it arose out of the same "transaction or occurrence."

9

Transcontinental cites *Mitchell v. CFC Fin. LLC* to support its contention. 230 F.R.D. 548 (E.D. Wis. 2005). In *Mitchell*, the plaintiff sought to amend the complaint to substitute a new defendant to correct its failure to name the legally responsible entity. *Id*. at 549. The court allowed the plaintiff to correct the misnomer, noting that in cases where a plaintiff misstates the name of a corporation, "[c]ourts consistently allow relation back when plaintiffs make mistakes of this type because the correct defendant is already before the court, is aware that it is being sued, and will suffer no prejudice from the amendment." *Id*. at 550.

Transcontinental also cites *Staren v. American Nat'l Bank & Trust Co.* to support its position. 529 F.2d 1257 (7th Cir. 1976). In *Staren*, the plaintiffs filed an amended complaint seeking to substitute Staren and Company, Inc. as the party plaintiff instead of the individual plaintiffs. 529 F.2d at 1259. Staren and Company, Inc. was the actual purchaser of the securities in question, rather than the individual plaintiffs named in the suit. *Id*. The Seventh Circuit reversed the district court's ruling denying the plaintiff's the right to file an amended complaint. *Id*. at 1264. The court reasoned that "[t]he substitution of such parties after the applicable statute of limitations may have run is not significant when the change is merely formal and in no way alters the known facts and issues on which the action is based." *Id*. at 1263. Moreover, the court noted that "the substituted corporate plaintiff had such an identity of interest with the individual plaintiffs that the original complaint served to notify defendant [] of the actual claim being asserted against it, with no resulting prejudice to its interests." *Id*.

Transcontinental also argues that the Wisconsin Supreme Court has applied the identical "transaction or occurrence" test that applies under the federal rule for amendments changing a plaintiff. In *Korkow v. General Casualty Co.*, the Wisconsin Supreme Court, in holding that an

10

amendment adding a second plaintiff related back to the original filing date, reasoned that "[p]rovided a defendant is fully apprised of a claim arising from specified conduct by the original pleading, his ability to protect himself will not be prejudicially affected if a new plaintiff is added and he should not be permitted to make a statute of limitations defense." 117 Wis. 2d 187, 196, 344 N.W.2d 108, 113 (Wis. 1984). The court stated under Wis. Stat. 802.09(3), "[t]he basic test for whether an amendment should be deemed to relate back is the identity of transaction test, i.e., did the claim or defense asserted in the amended pleading arise out of the same transaction occurrence or event set forth in the original pleading." *Id*. The court further noted that "[t]he evident purpose behind [Wis. Stat. 802.09(3)], like the purpose behind Federal Rule 15(c), is to ameliorate the effect of the statute of limitations in situations where the original pleadings provided fair notice to the opposing party of the claim or defense raised." *Id.*

Transcontinental contends that CDM has been put on notice of the claim arising from the specified conduct by the original pleading; namely, that the insurer that funded the repairs to the Project, a CNA service mark company, intended to recover from CDM for the costs incurred. Moreover, Transcontinental argues that CDM has not been prejudicially affected because discovery is open, no trial date has been set, and CDM has not lost any opportunities to develop the facts regarding Transcontinental's involvement in funding the repairs to the Project, as it has taken little discovery regarding CNA's role in funding the project.

I conclude that Transcontinental's amended complaint arises out of the same transaction or occurrence set forth in the original pleading. "CNA Insurance Company" is merely a misnomer, and the amended complaint simply corrects this misnomer. The facts forming the basis of the claim are

11

identical for both the original complaint naming CNA as the plaintiff, and the amended complaint naming Transcontinental as the real party in interest.

Moreover, I conclude that CDM will not be prejudiced by allowing the amendment, and that CDM "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party." CDM has been on notice that an insurance company funded repairs to the Project in the amount of $731,754.68, and that this insurance company intended to recover this amount from CDM. The only change in circumstance is that, rather than the insurance company being named "CNA Insurance Company," it is named Transcontinental, which is nevertheless a CNA service mark company. Simply stated, "the change is merely formal and in no way alters the known facts and issues on which the action is based."

In response to CDM's contention that Transcontinental has not provided a reason as to why it has failed to amend the complaint earlier, Transcontinental notes that Fed. R. Civ. P. 15(a) creates a liberal policy towards amendments, as leave is "freely given when justice so requires." Moreover, as stated by the Seventh Circuit, "legitimate legal claims may not be squelched when a party mistakenly identifies a party to be sued within the meaning of Rule 15(c)."

To be sure, Transcontinental has not provided an explanation as to why this misnomer was not discovered during the past 3 1/2 years. However, this technical procedural defect does not impact the legitimacy of Transcontinental's legal claims, or significantly prejudice CDM in any way.

In regards to CDM's argument that Transcontinental does not specify what pleadings it wishes to amend and why, Transcontinental has rendered this issue moot by attaching its proposed amendment as Exhibit 1 to its reply brief. Transcontinental, as shown by its proposed amendment, seeks only to amend the complaint to properly identify itself as the real party in interest. As stated

12

in its reply brief, Transcontinental, through the amendment, wishes to allow the dispute to be tried on its merits should settlement efforts fail.

Such being the case, the court will allow Transcontinental to substitute itself in lieu of the plaintiff erroneously denominated "CNA Insurance Company." This court retains subject matter jurisdiction despite the misnomer, the amended complaint relates back to the date of the original filing because it arose from the same transaction or occurrence, and the amendment does not prejudice CDM.

**NOW THEREFORE IT IS ORDERED** that Transcontinental's motion to intervene and for leave to file amended pleadings be and hereby is **GRANTED**;

**SO ORDERED** this 1st day of February 2007, at Milwaukee, Wisconsin.

    s/ William E. Callahan, Jr.
    WILLIAM E. CALLAHAN, JR.
    United States Magistrate Judge